Slip Op. 17-129

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **HOME DEPOT U.S.A., INC.,**<br><br>                      Plaintiff,<br><br>      v.<br><br>**THE UNITED STATES,**<br><br>                      Defendant. | Before: Hon. Richard W. Goldberg,<br>Senior Judge<br><br>Court No. 14-00061 |

## OPINION

[The court grants summary judgment in favor of Defendant.]

Dated: September 21, 2017

*William Randolph Rucker*, Drinker Biddle & Reath LLP, of Chicago, IL, for Plaintiff Home Depot U.S.A., Inc.

*Amy M. Rubin*, Assistant Director, International Trade Field Office, U.S. Department of Justice, of New York, NY, for Defendant. With her on the brief were *Edward F. Kenny*, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, and *Chad A. Readler*, Acting Assistant Attorney General. Of Counsel on the brief was *Beth C. Brotman*, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

## BACKGROUND

This case arises from the classification of merchandise under the Harmonized Tariff Schedule of the United States ("HTSUS") by U.S. Customs and Border Protection ("Customs"). Plaintiff Home Depot U.S.A., Inc. ("Home Depot") is an importer and retailer of home improvement merchandise. Home Depot challenges Customs' classification of certain key-operated locking hardware articles ("entry locks" or "entry door knobs" or "subject articles").

The subject articles were entered between July and December of 2012 and liquidated by Customs between May and November 2013. *See* Summons, ECF No. 1. Customs liquidated the subject articles under HTSUS subheading 8301.40.6030, at a duty rate of 5.7% *ad valorem*. *See* Complaint ¶ 17, ECF No. 5. Home Depot insists that Customs should instead classify the subject articles under HTSUS subheading 8302.41.6045, at a duty rate of 3.9% *ad valorem*. *See* Complaint ¶¶ 24, 28, ECF No. 5.

Home Depot timely protested Customs' classification of its merchandise. Customs denied Home Depot's protest. Home Depot timely filed suit in this court to contest the denial of its protest. Home Depot and Defendant, the United States ("Defendant"), each filed a motion for summary judgment. Because Customs' appropriately classified the subject articles within HTSUS heading 8301, the court denies Home Depot's motion for summary judgment and grants Defendant's cross-motion for summary judgment.

## JURISDICTION AND STANDARD OF REVIEW

This Court has jurisdiction over this action under 28 U.S.C. § 1581(a).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." USCIT R. 56(a). Summary judgment in a classification case is appropriate only if "the material facts of what the merchandise is and what it does are not at issue." *BASF Corp. v. United States*, 35 CIT __, __, 798 F. Supp. 2d 1353, 1356–57 (2011) (citation omitted).

## DISCUSSION

"In a classification case, 'the court construes the relevant (competing) classification headings, a question of law; determines what the merchandise at issue is, a question of fact; and then' determines 'the proper classification under which [the merchandise] falls, the ultimate

question in every classification case and one that has always been treated as a question of law.'" *BASF Corp.*, 35 CIT at __, 798 F. Supp. 2d at 1357 (quoting *Bausch & Lomb, Inc. v. United States*, 148 F.3d 1363, 1366 (Fed. Cir. 1998)).

Merchandise is classified in accordance with the General Rules of Interpretation ("GRIs"). The GRIs are applied in numerical order. If the proper classification is achieved through a particular GRI, the remaining successive GRIs should not be considered. *See Mita Copystar Am. v. United States*, 160 F.3d 710, 712–13 (Fed. Cir. 1998).

Under GRI 1, the court must determine the appropriate classification "according to the terms of the headings and any relative section or chapter notes," HTSUS GRI 1, according all terms their "common commercial meaning," *Millennium Lumber Distrib., Ltd. v. United States*, 558 F.3d 1326, 1328–29 (Fed. Cir. 2009) (citation omitted). In construing tariff provisions, "[a] court may rely upon its own understanding of the terms used and may consult lexicographic and scientific authorities, dictionaries, and other reliable information sources." *Carl Zeiss, Inc. v. United States*, 195 F.3d 1375, 1379 (Fed. Cir. 1999) (citation omitted).

An article is classifiable under GRI 1 if it "is described in whole by a single classification heading or subheading" of the HTSUS. *La Crosse Tech., Ltd. v. United States*, 723 F.3d 1353, 1358 (Fed. Cir. 2013) (quoting *CamelBak Prods., LLC v. United States*, 649 F.3d 1361, 1364 (Fed. Cir. 2011)). "With regard to assessing an imported article pursuant to GRI 1, we consider a HTSUS heading or subheading an *eo nomine* provision when it describes an article by a specific name." *CamelBak Prods.*, 649 F.3d at 1364 (citation omitted). "Absent limitation or contrary legislative intent, an *eo nomine* provision 'include[s] all forms of the named article[,]' even improved forms." *Id.* at 1364–65 (citation omitted). However, "[w]hen goods are in character or function something other than as described by a specific statutory provision—either

more limited or more diversified—and the difference is significant, then the goods cannot be classified under an *eo nomine* provision pursuant to GRI 1." *See La Crosse Tech.*, 723 F.3d at 1358 (citation and internal quotation marks omitted).

"In order to determine whether the subject article is classifiable within an *eo nomine* provision, we look to whether the subject article is merely an improvement over or whether it is, instead, a change in identity of the article described by the statute." *CamelBak Prods.*, 649 F.3d at 1365 (citation omitted). "The criterion is whether the item possesses features *substantially in excess* of those within the common meaning of the term." *Id.* (quoting *Casio, Inc. v. United States*, 73 F.3d 1095, 1098 (Fed. Cir. 1996)).

"Several commercial factors also guide the court's assessment of whether articles fall within the scope of an *eo nomine* provision, including how the subject articles are regarded in commerce" and "how the subject articles are described in sales and marketing literature." *Id.* at 1368 (citations omitted).

For the reasons discussed below, the court holds that the subject articles are classifiable under heading 8301, and only heading 8301, pursuant to a GRI 1 analysis.

a. *The Parties' Competing Tariff Provisions*

The court begins by construing the parties' competing tariff provisions. Customs classified the subject articles under HTSUS subheading 8301.40.6030.[1] The Government argues that "[a]ll of the keyed entry locksets at issue are covered by Heading 8301 pursuant to GRI 1 in

---

[1] Customs' classification rulings are not entitled to *Chevron* deference. *United States v. Mead Corp.*, 533 U.S. 218, 231–234 (2001). Instead, "[t]he weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

that they are ' . . . locks (key, combination or electrically operated).'" Def.'s Mem. in Opp'n to Pl.'s Mot. for Summ. J. and in Supp. of Def.'s Cross-Mot. for Summ. J. 11, ECF No. 47 ("Def. MSJ"). Home Depot disagrees, insisting that "the subject entry door knobs are properly classified under Heading 8302 using a GRI 1 analysis." Pl.'s Mem. in Supp. of Mot. for Summ. J. 10, ECF No. 35 ("Home Depot MSJ"). The relevant portions of each HTSUS provision are excerpted below:

| Heading/Subheading | Article Description |
|---|---|
| 8301 | Padlocks and locks (key, combination or electrically operated), of base metal; clasps and frames with clasps, incorporating locks, of base metal; keys and parts of any of the foregoing articles, of base metal: |
| 8301.40 | Other locks: |
| 8301.40.60 | Other: |
| 8301.40.6030 | Door locks, locksets and other locks suitable for use with interior or exterior doors (except garage, overhead or sliding doors). |

| Heading/Subheading | Article Description |
|---|---|
| 8302 | Base metal mountings, fittings and similar articles suitable for furniture, doors, staircases, windows, blinds, coachwork, saddlery, trunks, chests, caskets or the like; base metal hat racks, hat-pegs, brackets and similar fixtures; castors with mountings of base metal; automatic door closers of base metal; and base metal parts thereof: Other mountings, fittings and similar articles, and parts thereof: |
| 8302.41 | Suitable for buildings: Other: |
| 8302.41.60 | Of iron or steel, of aluminum or of zinc: Suitable for interior and exterior doors (except garage, overhead or sliding doors): |
| 8302.41.6045 | Other. |

See HTSUS § XV, Ch. 83, headings 8301, 8302.

    i.    HTSUS 8301

HTSUS heading 8301, an *eo nomine* provision, covers "[p]adlocks and locks (key, combination or electrically operated), of base metal."

Heading 8301 is found in § XV, Chapter 83 of the HTSUS. The Section Notes define "base metals" as:

> [I]ron and steel, copper, nickel, aluminum, lead, zinc, tin, tungsten (wolfram), molybdenum, tantalum, magnesium, cobalt, bismuth, cadmium, titanium, zirconium, antimony, manganese, beryllium, chromium, germanium, vanadium, gallium, hafnium, indium, niobium (columbium), rhenium and thallium.

HTSUS § XV, Note 3.

A "lock" is "a device for securing a door, gate, lid, drawer, or the like in position when closed, consisting of a bolt or system of bolts propelled and withdrawn by a mechanism operated by a key, dial, etc." *See* Dictionary.com, http://www.dictionary.com/browse/lock?s=t (last visited Sept. 14, 2017). And the Explanatory Notes ("ENs") for heading 8301 explain that the heading covers "[l]ocks for doors . . . ." 8301 EN (B).[2]

"Operated" means "to perform a function" or "to produce an appropriate effect." Merriam-Webster Dictionary, https://www.merriam-webster.com/dictionary/operate (last visited Sept. 12, 2017). Therefore, a "key-operated" lock indicates that a key performs a function, or produces an appropriate effect, for a "device for securing a door."

    ii.    HTSUS 8302

HTSUS heading 8302, Home Depot's proffered provision, covers "[b]ase metal mountings, fittings and similar articles suitable for . . . doors . . . ." This is also an *eo nomine* provision.

Heading 8302 is likewise found in § XV, Chapter 83 of the HTSUS. Therefore, "base metal" has the same meaning in heading 8302 as it does in heading 8301.

---

[2] The Explanatory Notes to the Harmonized Commodity Description and Coding System "are not legally binding but may be consulted for guidance and are generally indicative of the proper interpretation of a tariff provision." *Agfa Corp. v. United States*, 520 F.3d 1326, 1329 (Fed. Cir. 2008) (citation omitted).

The relevant ENs explain that heading 8302 "covers general purpose classes of base metal accessory fittings and mountings, such as are used on furniture, doors, windows, coachwork, etc." 8302 EN. The ENs further explain that the term "[m]ountings, fittings and similar articles suitable for buildings" includes "handles and knobs for doors, including those for locks and latches." 8302 EN (D)(7).

In turn, a "knob[ ] for [a] door" or "doorknob" is "a knob that releases a door latch." Merriam-Webster Dictionary, merriam-webster.com/dictionary/doorknob (last accessed Sept. 14, 2017).

b. *The Articles at Issue*

There are no material facts at issue regarding the merchandise.[3] The subject articles are models made of stainless steel, brass, or nickel. The subject articles are packaged and sold with the following constituent parts: an exterior door knob with trim, an interior door knob with trim, a latch component, a flanged strike plate, keys, and installation hardware. The latch component consists of a spring-loaded latch protruding from a frame that is capped with a plate. The knob and latch components include various base metal parts that support the components' function and allow for assembly of the product. Each knob has a locking feature. On the interior knob, there is a thumbturn. On the exterior knob, there is a slot for a key. The key slot is the visible portion of a keyed cylinder that is encased within the exterior knob and trim.[4]

---

[3] The court's factual findings regarding the subject articles are based on its review of (i) samples of the actual articles in their original packaging, Defendant's Physical Exhibits 2A, 2B, 2C, and 2D, *see* ECF No. 50, (ii) the articles' webpages, Home Depot MSJ, Ex. 2, ECF No. 35-2 ("Product Webpages"), and (iii) Home Depot's Response to Defendant's First Interrogs. Answer 7, Home Depot MSJ, Ex. 1, ECF No. 35-1 ("Pl. 1st Interrog. Resp.").

[4] In addition to the subject articles, i.e., "entry" door knobs, Home Depot also sells "passage" and "privacy" door knobs. Customs classifies passage and privacy door knobs under heading 8302, at a duty rate of 3.9% *ad valorem*. These types of door knobs share certain features with entry door knobs, in terms of components and appearance. The basic difference

The court must now determine whether the subject articles fall within either or both of the provisions. If both, the court will move onto the succeeding GRIs. HTSUS GRI 3 ("When . . . goods are, *prima facie*, classifiable under two or more headings, classification shall be elected" by reference to GRI 3). However, if the subject articles are described in whole by a single HTSUS heading, "the court is not to look to the subsequent GRIs." *R.T. Foods, Inc. v. United States*, 757 F.3d 1349, 1353 (Fed. Cir. 2014) (citations omitted).

   c. *The Subject Articles Are Described in Whole by Heading 8301*

Customs classified the subject articles as "locks." For the following reasons, the court affirms this classification.

The subject articles are made of base metal, as that term is defined in Note 3 of HTSUS § XV. Steel and nickel are base metals, while brass is generally an alloy of copper and zinc, both of which are base metals. Each article is a "lock" in that it is a "device for securing a door . . . consisting of a bolt or system of bolts propelled and withdrawn by a mechanism by a key, dial, etc." *See* Dictionary.com, http://www.dictionary.com/browse/lock?s=t (last visited Sept. 14, 2017). And each article is "key-operated" in that a key produces an appropriate effect of locking or unlocking the device.[5]

---

among the knobs is whether they lock and, if so, how. Passage door knobs do not lock and are commonly found on interior doors of houses. Pl.'s Statement of Material Facts Not in Issue ¶ 37, ECF No. 35 ("Pl. SMF"). Passage door knobs simply allow the user to grasp and turn the knob to open or close the door. Privacy and entry door knobs have locking mechanisms. Like entry door knobs, privacy door knobs have a thumbturn on the interior knob. Pl. SMF ¶ 48. Unlike entry door knobs, privacy door knobs have no keyed cylinder and can be unlocked from the outside by turning a slotted cylinder on the exterior knob with a flat object. Pl. SMF ¶ 49.

[5] Home Depot argues that the subject articles are not "key-operated" locks because the latch component of the subject articles is not directly propelled and withdrawn by the key. Home Depot MSJ 31. Rather, the key unlocks the knob, which then withdraws the latch when turned. But nothing in the meaning of the term "operate" or "lock" requires this direct effect. Indeed, the very definition of "lock" cited by Home Depot (and by Defendant, *see* Def. MSJ 12, and by the court) merely provides that the bolt is "propelled and withdrawn by a *mechanism*

As defined by the court and both parties, a "lock" is a "device" characterized by multiple components, including a bolt and a mechanism for propelling and withdrawing the bolt. That a lock consists of multiple parts is also made clear by the ENs to heading 8301, which explain that the heading includes "base metal *parts* of [padlocks and locks] clearly recognisable as such," including "bolts" and "cylinder barrels."  8301 EN 1 (emphasis added).

Critical to the court's analysis, knobs can be, and are here, parts of a lock. This conclusion is supported by the standards promulgated by the American National Standards Institute ("ANSI") and Builders Hardware Manufacturers Association ("BHMA").[6] Home Depot submitted each model of the subject articles for ANSI/BHMA testing and certification. *See* Pl. 1st Interrog. Resp. Answer 6(a). Each model was tested and certified under ANSI/BHMA Standard A156.2 (2011) ("Standard A156.2"), which establishes performance requirements for "bored and preassembled locks and latches . . . ." *Id.* Answer 6(b); *see also* Standard A156.2, Home Depot MSJ, Ex. 14, ECF No. 35-14. Standard A156.2 describes an "Entry Lock" as a:

> Dead locking latch bolt operated by lever from either side except when outside lever is locked by turn button or other locking device inside. When outside lever is locked, latch bolt is operated by key in outside lever or by operating inside lever. Turn button or other locking device shall be manually operated to unlock outside lever.

---

operated by a key . . . ." Home Depot MSJ 31 (emphasis added). The subject articles' mechanism for propelling and withdrawing the bolt includes a knob. This fact does not compel Home Depot's conclusion that the subject articles are not key-operated locks.

[6] The ANSI is a standards organization and the BHMA is a trade association. Together, the organizations publish standards against which certain hardware-related products can be tested and certified.

Standard A156.2 Function Description F81.[7]  Standard A156.2 also provides that "levers" and "knobs," as well as "paddles" and "handlesets," are all interchangeable, as each constitutes "operating trim."  Standard A156.2 General 3.3.  Finally, the standard includes a drawing of a "Typical Preassembled Lock" that depicts a latch, a keyed cylinder, and two door handles, among other components.  Standard A156.2 at 7.

Standard A156.2 adds vital detail to the court's understanding of the term "lock" as a multi-component device.[8]  To a substantial degree, the subject articles fit the Standard A156.2 description of an "Entry Lock."  Most important to the parties' dispute, Standard A156.2 describes the subject articles' interior (inside) and exterior (outside) knobs (levers) as parts of a lock.

Moreover, Home Depot largely advertised the subject articles as "locks."  On its website, Home Depot listed the subject articles as "knobs" or "knobsets."  *See* Product Webpages. However, in the "Product Overview" section in each listing, Home Depot informed consumers that "[t]his lock features a radius latch with an adjustable backset and optional drive-in feature" and that "[w]hen used as a replacement lock only a screwdriver is need [sic] to make installation a snap."  *See* Product Webpages at 8.  The Product Overview also explains that the product

---

[7] Home Depot's expert "testified that the subject entry door knobs were described by ANSI A156.2 as an 'F82B Entry Lock,'" rather than an F81 Entry Lock.  Pl.'s Resp. to Def.'s Cross-Mot. for Summ. J. 3, ECF No. 55 (citing Colvin Expert Rep. 26, Home Depot MSJ, Ex. 5, ECF No. 35-5).  Contrary to Home Depot's insistence, the distinction between the two Function Descriptions is not relevant to the court's analysis or disposition.

[8] *See Rocknel Fastener, Inc. v. United States*, 267 F.3d 1354, 1361 (Fed. Cir. 2001) ("Standards promulgated by industry groups such as ANSI . . . are often used to define tariff terms . . . .").  ANSI standards are a legitimate interpretive resource when those standards "are consistent with dictionary definitions but supplement those definitions where needed . . . ." *Id.* Here, the dictionary definition for "lock" cited by both parties, and adopted by the court, describes a "device" with a "mechanism operated by a key."  Standard A156.2 is consistent with this definition while supplementing with additional detail regarding the features of the "device" and the operation of the "mechanism."

"[i]ncludes keyed entry knob and single cylinder deadbolt." *Id.* In other words, the exterior knob is described as just one component of "this lock." On balance, Home Depot's online listing for the subject articles reveals that the product is held out as a lock by Home Depot to the customers its seeks to reach.

Standard A156.2 and Home Depot's Product Webpages are "commercial factors [that] guide the court's assessment of whether articles fall within the scope of [heading 8301,] an *eo nomine* provision." *See CamelBak Prods.*, 649 F.3d at 1368. In light of the terms of heading 8301, and guided by relevant commercial factors, the court finds that heading 8301 describes the subject articles in whole. In sum, a lock is a multi-component device, of which one component is a lever. In some types of locks, the lever is a door knob. Put differently, the interior and exterior knob components of the subject articles do not result in "a change in identity of the [locks] described by the statute." *See id.* at 1365. The fact that these particular locks incorporate door knobs, whereas some locks do not, does not mean that the subject articles "are in character or function something other than as described by" heading 8301. *See La Crosse Tech.*, 723 F.3d at 1358 (internal citation and quotation marks omitted). Of course, door knobs are not always parts of "key, combination or electrically operated" locks. And, when they are not, they may be properly classified under heading 8302, as discussed below.

For these reasons, the subject articles are classifiable under HTSUS heading 8301.[9]

---

[9] There is an additional consequence of the court's finding that the door knob components of the subject articles are "parts" of "locks." The relevant chapter notes provide that, "[f]or the purposes of [Chapter 83, which includes both headings 8301 and 8302], parts of base metal are to be classified with their parent articles." HTSUS Ch. 83, Note 1. A "part" is an "essential element or constituent; integral portion which can be separated, replaced, etc." *Rollerblade, Inc. v. United States*, 282 F.3d 1349, 1353 (Fed. Cir. 2002) (quoting Webster's New World Dictionary 984 (3d College Ed. 1988)). Lock parts, such as "knobs for . . . for locks or latches," might be properly classified under heading 8302 when they are entered in a stand-alone manner. *See* 8302 EN (D)(7). In other words, base metal knobs will not always have an identifiable

    *d.  The Subject Articles Are Not Described in Whole by Heading 8302*

For its part, Home Depot maintains that the subject articles are properly classified under heading 8302, as "[b]ase metal mountings, fittings and similar articles suitable for . . . doors . . ." pursuant to a GRI 1 analysis.  Home Depot MSJ 10.

It is true that the base metal exterior and interior knob components of the subject articles operate to "release the latch" of the door in which they are installed.  Thus, the knob components are plainly "knobs for doors" under 8302 EN (D)(7).

But the subject articles possess features "substantially in excess" of door knobs.  *See CamelBak Prods., LLC*, 649 F.3d at 1365.  Rather, the subject articles are, as a whole, "in character [and] function [ ] other than as described" in heading 8302.  *See La Crosse Tech.*, 723 F.3d at 1358.  As discussed, each article is a device for securing a door, consisting of many parts.  Together, those parts constitute a lock.  The interior and exterior knobs are just two of those many parts.  So, while the subject articles *include* "knobs for doors, including those for locks," 8302 EN (D)(7), the subject articles are not described in whole by heading 8301 or by the term "knobs for doors."

Nevertheless, Home Depot insists that the subject articles are in fact door knobs, of which the lock is a mere feature or "improvement."  *See* Home Depot MSJ 18.  On this basis, Home Depot contends that Customs improperly excluded the subject articles from heading 8302.  But this contention is based on a flawed premise.  Home Depot makes much of the similarities between entry and privacy door knobs, framing the issue as follows: "are the entry door knobs merely an improvement over the door knobs covered by Heading 8302 or a completely different

---

parent article.  However, these base metal knobs are "integral," "constituent" parts of their classifiable parent articles, i.e., locks.

article classifiable in some other heading?" Home Depot MSJ 13–14.  In other words, Home Depot starts from the perspective of privacy door knobs and contends that, if the differentiating features of entry door knobs are "merely an improvement" over privacy door knobs, then entry door knobs must "remain" in heading 8302.  *See* Home Depot MSJ 29–30.  Home Depot has it backwards.

Pursuant to this court's definition of the term "lock," privacy door knobs are likely also "locks."  Indeed, the ANSI/BHMA standards identify privacy door knobs as "locks" while testing and certifying these articles under the same standard, A156.2, as entry locks.  *See* Standard A156.2 Function Descriptions F36, F37.  And Home Depot describes privacy door knobs as "locks" in online advertising.  *See* Home Depot MSJ, Ex. 7, ECF No. 35-7.  However, heading 8301 is expressly limited to "key, combination or electrically operated" articles.  Privacy door knobs, even if locks, are not "key, combination or electrically operated."  Thus, contrary to Home Depot's insistence, the subject articles are not being excluded from heading 8302.  Rather, privacy door knobs are expressly excluded from heading 8301.

In any event, the similarities between entry and any other door knobs are not automatically relevant to classification.  There is nothing *per se* invalid about two substantially similar articles being classified under separate provisions, if indeed that is what the HTSUS calls for.  An article is compared to the wording of the tariff provisions, not to other articles.  Here, the disparate classification of entry and privacy door knobs is entirely consistent with the clear language of heading 8301.

At most, heading 8302 accurately describes the exterior and interior knob components of the subject articles.  Accordingly, heading 8302 does not describe the subject articles in whole.  Moreover, the door knob components do not render the subject articles "composite goods"

subject to classification under GRI 3(b).  The court does not reach GRI 3 because the subject articles are not *prima facie* classifiable under more than one heading.  Rather, the subject articles are described in whole by heading 8301 and only heading 8301.  *See Mita Copystar Am.*, 160 F.3d at 713 ("[I]t is not appropriate to reach GRI 3(b) if GRI 1 dictates the proper classification for particular merchandise").

"Having classified the product under the appropriate heading, we now turn to the subheadings."  *Orlando Food Corp.*, 140 F.3d at 1442.  Customs identified the most appropriate subheading, 8301.40.6030, which covers "[d]oor locks, locksets and other locks suitable for use with interior and exterior doors."

## CONCLUSION

For the foregoing reasons, the court holds that Customs correctly classified the subject articles under HTSUS subheading 8301.40.6030.  Accordingly, Plaintiff's motion for summary judgment is denied and Defendant's cross-motion for summary judgment is granted.  Judgment will be entered accordingly.

Dated: September 21, 2017  
New York, New York

/s/ Richard W. Goldberg  
Richard W. Goldberg  
Senior Judge